UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOYD HALL III,<br><br>        Petitioner,<br>  vs.<br><br>B. CURRY, Warden,<br><br>        Respondent. | No. C 06-5812 MMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

Petitioner Boyd Hall, a California state prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges a 2005 decision by the Board of Prison Terms ("Board") finding him unsuitable for parole. The Court directed respondent to show cause why petitioner's cognizable claims should not be granted. Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a traverse. Having reviewed the parties' filings and the underlying record, the Court concludes petitioner is not entitled to relief based on the claims presented and will deny the petition.

**BACKGROUND**

In 1987, a San Bernardino Superior Court jury convicted petitioner of second-degree murder, see Cal. Pen. Code § 187, and assault with a firearm, see id. § 245(a)(2),

1

1  with an enhancement for the use of a firearm, see id. § 12022.5.  (Ans. Ex. 1 (Abstract of
2  Judgment).)   The trial court sentenced petitioner to a total term of twenty years-to-life.
3  (Id. Ex. 3 (Parole Hearing Transcript 10/26/05) at 1.)
4       In reaching its decision, the Board accepted the following facts taken from the
5  probation officer's report.  On the evening of November 13, 1985, Betty and Vernon
6  Harold were getting into their car when petitioner approached Betty Harold, placed a gun
7  at her side, and said, "Raise up the seat."  Petitioner then attempted to enter the vehicle,
8  stating, "You're going to drive me down the hill."  Vernon Harold told petitioner that he
9  would not give petitioner a ride.  Petitioner then took out a knife and held it to Betty's
10 side, at which point she told her husband petitioner had a knife and a gun.  Vernon and
11 petitioner began yelling at each other and Vernon ran to his wife's side of the car and
12 struggled with petitioner.  As the two men struggled, Betty escaped, and, as she escaped,
13 she heard a gunshot.  She heard a second gunshot as she reached the door of the restaurant
14 she and Vernon had left a few minutes before.  Betty turned around and saw her husband
15 on the ground and petitioner run off, firing the gun twice as he ran.  (Id. Ex. 3 at 12–15.)
16      In October 2006, the Board reviewed petitioner's record, including the
17 circumstances of the commitment offense, his participation in self-help, and the opinions
18 of law enforcement.  At the conclusion of the parole hearing, the Board found petitioner
19 unsuitable for parole, on the ground he "would still pose an unreasonable risk of danger to
20 society or a threat to public safety if released."  (Id. at 64.)  In reaching its decision the
21 Board found the offense "was an inexplicable crime and it was incredibly cold-blooded."
22 (Id.)  The Board considered, and expressed great concern over, petitioner's record with
23 respect to participating in self-help (id. at 43–48); the Board found petitioner had "not
24 sufficiently participated in beneficial self-help" (id. at 66), with one commissioner
25 characterizing petitioner's efforts in that regard as "sporadic and minimal" (id. at 29) and
26 another commissioner expressing a lack of "any comfort . . . that [petitioner] has the tools
27 or the insight or the knowledge to prevent something like [the commitment offense from]
28 happening again."  (Id. at 68.)  The Board acknowledged that petitioner had acquired data

1  entry and computer refurbishing skills and completed vocational x-ray technician training
2  (id. at 26), and heard from petitioner's attorney, who reminded the Board that petitioner
3  had no prior criminal history and had "stayed disciplinary free" while in prison (id. at 56).
4  The Board also heard from the San Bernardino District Attorney's Office, which voiced
5  its strong opposition to petitioner's parole (id. at 52–56), as well as from Debbie Lantz
6  and Vincent Harold, the Harolds' daughter and son, both of whom strongly opposed
7  petitioner's release (id. at 59–63).  After a full hearing, at which all of the above factors
8  were considered, the Board found petitioner unsuitable for parole, and set petitioner's
9  next parole hearing for a date four years from the Board's 2005 decision.  (Id. at 69.)

10  In response to the Board's decision, petitioner filed state habeas petitions, all later
11  denied, in the San Bernardino Superior Court, California Court of Appeal, and California
12  Supreme Court.  (Pet. at 4–5.)  The Superior Court issued the last reasoned decision.  In
13  its order denying the petition, the Superior Court concluded that petitioner's inability to
14  articulate his reasons for committing the murder "manifests a disturbed mind and the
15  [B]oard could rightfully expect a comprehensible explanation of not only why the
16  [p]etitioner committed the crime, but also why they should believe that he would not act
17  so dangerously in the future."  (Ans. Ex. 4 at 2.)

18  In 2006, petitioner filed the instant federal petition.  As grounds for federal habeas
19  relief, petitioner alleges that (1) the Board's decision violated his rights to due process
20  and equal protection by denying him the individualized consideration mandated by state
21  and federal law; (2) the Board violated his rights to due process and equal protection by
22  denying him parole based on evidence "with some indicia of reliability," which,
23  according to petitioner, is a lower standard of proof than is constitutionally mandated;
24  (3) the Board's decision to deny him parole violated his liberty interest, protected by due
25  process, in release on parole; and (4) the Board violated his constitutional rights to due
26  process, confrontation, double jeopardy and equal protection by basing the denial of
27  parole on his refusal to admit to a crime of which he was acquitted.  The Court will
28  consider petitioner's first three claims together, in light of the relationship of the issues

raised therein.

## DISCUSSION

**A.     Standard of Review**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000).  A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1).  Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 796 (2001).

The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005).  When there is no reasoned opinion from the highest state court to have considered the petitioner's claims, the district court looks to the last reasoned state court opinion, which, in this case, is the Superior Court's opinion denying the state petition for a writ of habeas corpus.  (Ans. Ex. 4); see Nunnemaker, 501 U.S. at 801–06; Shackleford v. Hubbard, 234 F.3d 1072, 1079  n. 2 (9th Cir. 2000).

**B.     Petitioner's Claims**

**1.     Claims 1–3**

As noted, petitioner alleges that (1) the Board's decision violated his rights to due process and equal protection by denying him the individualized consideration mandated by state and federal law; (2) the Board violated his rights to due process and equal protection by denying him parole based on evidence "with some indicia of reliability," which, according to petitioner, is a lower standard of proof than is constitutionally mandated; (3) the Board's decision to deny him parole violated his liberty interest, protected by due process, in release on parole.

The Board's denial of parole complies with due process provided there is "some evidence" to support its decision.  As the Supreme Court has explained, a parole board's decision deprives a prisoner of due process if the Board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary."  See Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454–55 (1985)); see also McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) (same). Additionally, the evidence underlying the Board's decision must have "some indicia of reliability."  See McQuillion, 306 F.3d at 904.  Accordingly, if the Board's determination with respect to parole suitability is to satisfy due process, such determination must be supported by some evidence having some indicia of reliability.  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904.

In assessing whether there is "some evidence" to support the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations.  Pursuant to such regulations, "[t]he panel shall first determine whether the life prisoner is suitable for release on parole[;] [r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  15 Cal. Code Regs. § 2402(a).  Additionally, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable

for parole. Id. § 2402(c)–(d).[1] One circumstance tending to show an inmate's unsuitability is that the crime was committed in an "especially heinous, atrocious or cruel manner." Id. § 2402(c). Two factors that the parole authority may consider in determining whether such a circumstance exists are whether "[t]he offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id. § 2402(c)(1)(D) & (E). In addition to these factors, the Board is to consider "all relevant, reliable information available." Id. § 2402(b).

It is now established under California law that the task of the Board is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). Consequently, the constitutional "some evidence" requirement is that there exists some evidence that the prisoner constitutes such a danger, not simply that there exists some evidence of one or more of the factors listed in the regulations as considerations appropriate to the parole determination. Id. at 1205–06.

Applying these legal principles to the instant matter, the Court, as set forth below, concludes petitioner is not entitled to habeas relief on his first three claims.

As to the first claim, petitioner's assertions are clearly contradicted by the record. The Board's review focused entirely on the individualized considerations mandated by the relevant legal authorities, and, in particular, under those considerations set forth in §§ 2402 and 3041 of the California Code of Regulations. Specifically, the Board

---

[1] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

6

reviewed the particular circumstances of petitioner's commitment offense in detail, discussed with petitioner his social history, parole plans, behavior and activities in prison, and his opinions on his suitability for parole. The Board also heard from petitioner's own attorney, the district attorney, and the children of the victim. Based on this record, which demonstrates the Board conducted a sufficiently thorough examination of petitioner's parole suitability, the Court concludes petitioner's claim that the Board's decision was not based on individualized considerations fails.

As to his second claim, petitioner has offered no case or other authority holding the "some evidence" standard is a lower standard of proof than is constitutionally required. As discussed above, the Board's decision complies with due process if it is supported by some evidence having some indicia of reliability. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904. Petitioner's argument to the contrary is without merit.

As to petitioner's third claim, the Court finds petitioner's argument unpersuasive. First, with respect to the circumstances of the commitment offense, some evidence exists to support the Board's determination that the offense "was an inexplicable crime" and "incredibly cold-blooded." (Ans. Ex. 3 64.) In particular, the record shows petitioner, without provocation, approached the Harolds, threatened them with a knife and a gun, and, as Vernon Harold tried to protect his wife, shot him to death. Based on this record of unpredicted and excessive violence, the Court finds some evidence exists to support the Board's finding that the circumstances of the commitment offense indicate petitioner remained unsuitable for parole in 2005. While at some point in the future, the circumstances of the offense may cease to have the same probative value as to the question of petitioner's dangerousness, they constitute, as of the time of the Board's decision, some evidence to support the Board's finding. Further, in addition to the circumstances of the commitment offense, the Board thoroughly considered petitioner's lack of participation in self-help programs, and his lack of insight into why he committed this crime. In sum, based on the above-described record, the Court cannot say the state

court acted contrary to federal law or applied such law unreasonably in concluding the Board's decision complied with due process.

Lastly, because petitioner's equal protection claims constitute no more than a reiteration of petitioner's due process claims, such claims likewise fail to state a basis for habeas relief.

Accordingly, to the extent petitioner seeks habeas relief on his first three claims, the petition will be denied.

**2.    Claim Four**

Petitioner claims the Board violated his constitutional rights to due process, confrontation, double jeopardy and equal protection, by basing the denial of parole on his refusal to admit to a crime of which he was acquitted. Specifically, petitioner contends, the Board found him unsuitable for parole because he refused to admit that the commitment offense was in fact a first-degree murder. Petitioner also contends he was denied equal protection and due process because the Board failed to conduct an individualized assessment of his parole suitability in conformity with statutory authority, specifically, the state's sentencing matrix.

As discussed above, the record demonstrates the Board conducted an individualized assessment of petitioner's parole suitability based on the appropriate legal standards. The record does not support petitioner's contention that the Board refused to grant him parole because of his refusal to admit to a more serious crime than the crime of which he was convicted. Rather, the record indicates the Board inquired into the circumstances of the offense and asked for petitioner's assessment of his motivations in committing his crime. The record in no manner supports petitioner's contention that he was retried for his crime or not allowed to confront evidence against him. Petitioner's assertion that the Board denied him the equal protection rights owed him under California's sentencing matrix, likewise is without merit. The Board need not consider the sentencing matrix if an inmate has been found unsuitable for parole. See In re Dannenberg, 34 Cal.4th 1069, 1071 (2005).

1  Given the instant record, the Court cannot say `the state court's decision was
2 inconsistent with federal law or unreasonable in any factual determination.
3  Accordingly, petitioner is not entitled to habeas relief on this claim.

**CONCLUSION**

Because the record contains, at a minimum, some evidence to support the Board's finding that petitioner would present an unreasonable risk of danger to society if released, and because petitioner has made an insufficient showing as to his entitlement to relief on his other claims, the Court finds the state court's determination was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor can the Court say it was based on an unreasonable determination of the facts.  Accordingly, the petition for writ of habeas corpus is hereby DENIED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: July 2, 2009

_____
MAXINE M. CHESNEY
United States District Judge